IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Richard King,                :

    Plaintiff,           :

  v.                         :        Case No. 2:10-cv-852

Edward Banks, et al.,        :        JUDGE ALGENON L. MARBLEY
                                  Magistrate Judge Kemp
    Defendants.          :

## REPORT AND RECOMMENDATION

Plaintiff Richard King brought this civil rights action pursuant to 42 U.S.C. §1983. The case involves incidents that took place on July 11, 2010 at Noble Correctional Institution ("NCI"), located in Caldwell, Ohio. Mr. King's complaint alleges that the defendants, Warden Edward Banks, Deputy Warden Timothy Buchanan, Corrections Officer Todd Roberts, and Corrections Officer Bryan Kerns, failed to protect Mr. Banks from injuries he received at the hands of other inmates.

On September 6, 2011, the defendants filed a motion for summary judgment and Mr. King opposed it. (Doc. ## 28, 30). The Court then ordered Mr. King to supplement his opposition with appropriate affidavit evidence (Doc. #34), which he did on January 11, 2012. (Doc. #39). For the following reasons, this Court recommends that defendants' motion for summary judgment (#28) be granted.

## I. Factual Background

This case involves Mr. King's allegation that defendants failed to protect him from assaults by fellow inmates. Mr. King is currently incarcerated for crimes of "pandering obscenity involving minors." (Doc. #28, p.2). He alleges he was assaulted once on July 6, 2010 and twice on July 11, 2010 by fellow inmates

who he claims were targeting him for "touching kids." (Doc. #4, p.5). According to Mr. King's unsworn complaint, fellow inmates at NCI had placed Mr. King on a "hit list" and Mr. King notified several corrections officers that he was on this list. These officers responded that "the administration, Warden Banks, and Deputy Warden Buchanon [knew] about this hit list and that the assaults were happening but [were] not doing anything about it." (Doc. #4, p.5). In his sworn statement attached to his supplemented opposition to the motion for summary judgment, however, Mr. King does not mention the warden or deputy warden specifically and instead states only that the "administration" knew of the hit list. (Doc. #39, Ex. A).

Mr. King also alleges in his complaint that the inmates who assaulted him on July 11, 2010 "had to pass by the corrections officers, [Corrections Officers] Roberts and John Doe, to get to the sleeping area" where he was assaulted. (Doc. #4, p. 11). His complaint was served on Corrections Officer Roberts and the "Corrections Officer Assigned to E-1 Dormitory on July 11, 2010." (Doc. #11, p. 7). Bryan Kerns answered Mr. King's complaint and has not objected to service, and so this Court will treat Mr. Kerns for purposes of this motion only as the other corrections officer at the desk during the time of the July 11 assaults. According to Mr. King's sworn statement attached to his motion in opposition, the officers on duty "allowed these inmates . . . to come into the unit and [assault him]." (Doc. 39, Ex. A).

In a sworn affidavit, Warden Banks states that he received an email on July 11, 2010 stating Mr. King had suffered an assault by other inmates, which Mr. King believed was a result of his "sex case convictions." (Doc. #28, Ex. A). Warden Banks then approved a transfer to another prison for Mr. King "to insure his safety and security." (Doc. #28, Ex. A). Mr. King was taken to a hospital, seen by inmate health services, and placed

in segregation until he was transferred to another institution. (Doc. #28, Ex. A). Mr. King was transferred out of NCI on July 13, 2010. Warden Banks claims that the first time he received any information regarding a hit list was when Mr. King's complaint in this case was filed. (Doc. #28, Ex. A).

On or about August 14, 2010, Mr. King filed an informal complaint resolution, number NCI-09-10-000076, which complained that on July 11, 2010 he had been assaulted "because of his case," and that he was "on a hit list that the administration knew about." (Doc. #28, Ex. G). Mr. King also complained that he was missing a number of personal items that were allegedly lost when Mr. King was transferred out of NCI. (Doc. #28, Ex. G).

On September 9, 2010, Mr. King filed a notification of grievance CI-09-10-000010 with the Chief Inspector's office and complained that he had filed a complaint with Inspector Williams and it had been "24 days and [he] had not received an answer . . ." (Doc. #28, Ex. H). He further added that NCI had "failed to provide proper safety for [his] well being" and he wanted to be reimbursed for the loss of his personal items and to be compensated for the "injuries sustained when inmates from other housing units came into [his] housing unit past the CO's desk to assault [him] . . . [and] the institution knew of these assaults prior to them happening." (Doc. #28, Ex. H). The only prison official named in his second grievance was Inspector Williams. Neither the first grievance nor the second specifically mentions the defendants in this case, Warden Banks, Deputy Warden Buchanan, or Corrections Officers Roberts and Kerns.

The Chief Inspector denied Mr. King's grievance number CI-09-10-000010 on September 27, 2010, finding that Inspector Williams was still investigating NCI-09-10-00076 and after final disposition Mr. King could appeal that decision. (Doc. #28, Exhibit I). He further stated that a grievance against the

3

Warden or Inspector must show that the Warden or the Inspector was personally and knowingly involved in a violation of law, rule, or policy and that Mr. King had failed to indicate that Inspector Williams was so involved. Inspector Williams denied Mr. King's grievance number NCI-09-10-00076 on October 13, 2010, finding that the prison did not act negligently when transferring Mr. King's personal property. (Doc. #18, Ex. A). Neither the disposition of grievance no. CI-09-10-000010 nor grievance no. NCI-09-10-00076 addressed any claims that the prison failed to protect Mr. King.

On September 24, 2010, Mr. King filed his complaint with this Court, alleging that defendants knew of the inmate assaults prior to them happening but did nothing to stop them (Doc. #4, p. 7), which this Court construes as a claim that the prison officials failed to protect Mr. King in violation of the Eighth Amendment to the U.S. Constitution. Defendants have filed a motion for summary judgment (Doc. #28) that is now ripe for decision.

## II. Summary Judgment Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed.R.Civ.P. 56(c), demonstrate the absence of a material factual dispute and that the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 467 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654,

655 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-249 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believe demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.

### III. Legal Analysis

#### A. Failure to Exhaust

Defendants argue that Mr. King did not exhaust his administrative remedies against Deputy Warden Buchanan and Corrections Officers Roberts and Kerns because these defendants were not mentioned in the two grievances that Mr. King filed. The Prison Litigation Reform Act of 1995 ("PLRA") prohibits an inmate from bringing an action under 42 U.S.C. §1983 until his administrative remedies are exhausted. See 42 U.S.C. §1997e(a). As the Court of Appeals observed, "[t]he point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." Reed-Bey v. Pramstaller, 603 F.3d 322, 324 (6th Cir. 2010) quoting Woodford v. Ngo, 548 U.S. 81, 94-95 (2006).

The PLRA's exhaustion requirement requires a prisoner to "complete the administrative review process in accordance with

5

the applicable procedural rules. . . ." <u>Woodford</u>, 548 U.S. at 88. "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." <u>Id.</u> at 90 (citation and quotation marks omitted). When a prisoner makes affirmative efforts to comply with the administrative grievance process but does not succeed, the question is "whether those 'efforts to exhaust were sufficient under the circumstances.'" <u>Risher v. Lappin</u>, 639 F.3d 236, 240 (6th Cir. 2011)(quoting <u>Napier v. Laurel County</u>, 636 F.3d 218, 224 (6th Cir. 2011)). Although "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances," <u>Jones v. Bock</u>, 549 U.S. 199, 219(2007), "a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." <u>Hall v. Warren</u>, 443 Fed. Appx. 99, 106 (6th Cir. 2011); <u>Sullivan v. Kasajaru</u>, 316 F. Appx. 469, 470 (6th Cir. 2009); <u>Peterson v. Cooper</u>, No. 10-2375, 2012 U.S. App. LEXIS 3773 (6th Cir. February 23, 2012). Although there are exceptions to this rule (<u>see e.g.</u> <u>Reed-Bey v. Pramstaller</u>, 603 F.3d 322, 324 (6th Cir. 2010)), such exceptions are not applicable here.

Under Ohio Administrative Code §5120-9-31, the inmate grievance procedure is comprised of three consecutive steps designed to address inmate complaints related to any aspect of institutional life that directly and personally affects them. O.A.C. §5120-9-31(A)(K). "Whenever feasible, inmate complaints should be resolved at the lowest step possible. Informal complaints and grievances must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved and the name or names of any witnesses." O.A.C. §5120-9-31(K). The

6

three step process includes the filing of an informal complaint to the direct supervisor of the staff member or department most directly responsible, the filing of the notification of grievance with the inspector of institutional services, and the filing of an appeal of the disposition of grievance with the office of the chief inspector. O.A.C. §5120-9-31(K)(1)-(3). The decision of the chief inspector or designee is final. O.A.C. §5120-9-31(K)(3). Grievances against the warden or inspector of institutional services, however, must be filed directly to the office of the chief inspector and must show that the warden or inspector of institutional services was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation. O.A.C. §5120-9-31(M).

Under the applicable law laid out above, Mr. King did not exhaust his administrative remedies against Deputy Warden Buchanan and Corrections Officers Roberts and Kerns. Where applicable, Mr. King was required to name the personnel involved in his grievance. See Leonard v. Mohr, No. 2:11-cv-152, 2012 WL 423771, *5(S.D. Ohio Feb. 9, 2012). Neither of the grievances he filed mention these defendants specifically, nor do they give enough factual context that these defendants would be on notice that Mr. King was claiming they failed to protect him from inmate assaults. In grievance no. NCI-09-10-000076, Mr. King simply states he was assaulted while in his dorm, he was on a "hit list," and the "administration" knew about it. His reference to the "administration" could not reasonably be construed to indicate Deputy Warden Buchanan specifically knew of an alleged "hit list" and he never mentions any role the corrections officers played in the incident. Moreover, in grievance no. CI-09-10-000010, Mr. King states he wished to be reimbursed for injuries he sustained when inmates "came into [his] housing unit

7

past the CO's desk to assault me twice in the same day" and that the "institution knew of these assaults prior to them happening." Again, he references that the "institution" knew of the assaults prior to them happening, but does not indicate Deputy Warden Buchanan specifically. Although in this second grievance Mr. King does reference the corrections officers, he does not indicate that they did anything wrong. Rather, he merely indicates that the inmates came into his room past the corrections officer's desk. For these reasons, Mr. King has not exhausted his administrative remedies against Deputy Warden Buchanan and Corrections Officers Roberts and Kerns and this Court recommends that summary judgment be granted in favor of those defendants.

### B. Failure to Protect

After recommending that summary judgment be granted to Defendants Buchanan, Roberts, and Kerns under a failure to exhaust analysis, this Court must turn to the claims against the only remaining defendant, Warden Banks. He argues that Mr. King has not come forward with sufficient evidence to support his claim that Warden Banks acted with deliberate indifference in failing to protect Mr. King from inmate assaults. The Eighth Amendment generally prohibits prison officials from being "deliberately indifferent" to the health or safety of prison inmates and, as a result, causing them to suffer unnecessary or purposeless pain or injury. Farmer v. Brennan, 511 U.S. 825, 828, 834 (1994). In particular, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Id. at 833(quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988). The Court has adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. Farmer, 511 U.S. at 839-840. It held that "a prison official

cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety...." Id. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. Id. Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844.

As a supervisory official, Warden Banks is not necessarily liable for the unconstitutional conduct of his subordinates. A supervisor is only liable for his or her own misconduct and must have actively engaged in unconstitutional behavior himself. Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir. 2006). There is no liability of a supervisor based solely on the right to control employees or simple negligence. Id. In order to prevail on his failure to protect claim, Mr. King must demonstrate at a minimum that Warden Banks was subjectively aware of the risk of assault yet took no steps to prevent it. See Farmer, supra; see also Greene v. Bowles, 361 F.3d 290, 294 (6th Cir. 2004).

Mr. King has not come forward with facts sufficient to show that Warden Banks acted with deliberate indifference. Mr. King attempts to show Warden Banks knew of and disregarded a risk to his health or safety by alleging that "the administration" had knowledge of a hitlist, that Mr. King's name was on that list, and the administration did nothing to protect him from assault. The evidence he submits to support this allegation, however, is hearsay. First, Mr. King relies on his own sworn statement wherein he states "C.O. Barringer, C.O. Steele, C.O. West, and C.O. Smith... [told me] that the administration knew or knows of this [hit list] but nothing is being done about it unless

9

something happens. They stated they found out about the hit list while in role(sic) call." (Doc. #39, Ex. A). Second, Mr. King relies on the sworn statement of Andrew Martin, a fellow inmate, that states that Corrections Officer Barringer told him that "the administration knew about this [hit list] but wasn't going to do anything unless something happened." (Doc. #39, Exhibit B).

The statements are hearsay because they are out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Namely, they are offered to show that the "administration" and therefore, Warden Banks, in fact knew of the hit list. See e.g. Teaque v. United States Gov't, No. 04-cv-00731-PSF-BNB, 2005 WL 2077126, *3 (D. Colo. Aug. 26, 2005)(recognizing that a reference to the "administration" could be inferred to be an allusion to the warden); Munson v. Hulick, No. 10-cv-52-JPG-PMF, 2011 U.S. Dist. LEXIS 29280 (S.D. Ill. Jan. 24, 2011)(construing the term "administration" to mean the warden). Although the statements might not be considered hearsay if they had been said directly to Mr. King or Mr. Martin by Warden Banks, they became hearsay when repeated to Mr. King and Mr. Martin through the corrections officers. See Kurincic v. Stein, Inc., 30 Fed. Appx. 420, 424-425 (6th Cir. 2002)(holding a statement was inadmissible hearsay when a co-worker told the plaintiff what a supervisor had said); Citchens v. BellSouth Telcom., No. 2:96CV33-B-B, 1997 WL 570855, *3(N.D. Miss. Sept. 2, 1997)(noting that plaintiff's affidavit recounting what a co-employee told him was stated by a supervisor would be inadmissible hearsay); Wilder v. Southeastern Pub. Serv. Auth., 869 F. Supp. 409, 416 (E.D. Va. 1994). Hearsay is not appropriate evidence on summary judgment, Alpert v. United States, 481 F.3d 404, 409 (6th Cir. 2007), and Mr. King has not supported his allegations that Warden Banks knew of and disregarded a risk to Mr. King's health or safety with any other appropriate summary

judgment evidence. Therefore, this Court recommends granting summary judgment in favor of Warden Banks.

## IV. Recommended Disposition

For the reasons set out above, it is recommended that defendants' motion for summary judgment be granted (Doc. #28).

## V. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge