IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD KING,**                        Case No. 2:10-cv-852

    **Plaintiff,**                           **Judge Algenon L. Marbley**
                                          **Magistrate Judge Kemp**
**v.**

**EDWARD BANKS, et al.,**

    **Defendants.**

## OPINION AND ORDER

Plaintiff, Richard King, a state prisoner, filed this action under 42 U.S.C. §1983 alleging that prison officials at the Noble Correctional Institution violated his constitutional rights. On March 29, 2012, the Magistrate Judge issued a Report and Recommendation recommending that defendants' motion for summary judgment be granted. On April 13, 2012, Mr. King filed objections to the Magistrate Judge's Report and Recommendation. Defendants filed a response to his objections on April 24, 2012. For the reasons that follow, petitioner's objections will be **OVERRULED**, the Report and Recommendation will be **ADOPTED** and **AFFIRMED**, and the defendants' motion for summary judgment will be **GRANTED**.

I.

If a party objects within the allotted time to a report and recommendation, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b) (1); *see also* Fed.R.Civ.P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §636(b)(1), and may also "receive further evidence or recommit the matter to the magistrate judge with instructions."

*Id.* If the Court agrees with the recommended disposition, the proper action is to adopt and affirm the report and recommendation. *See, e.g., Rodriguez v. United States,* 2011 WL 94574 (S.D. Ohio Jan. 11, 2011).

II.

As reflected in the Report and Recommendation, Mr. King alleges that the defendants, all of whom are or were employed at the Noble Correctional Institution, failed to protect him from injuries he received at the hands of other inmates. He was assaulted by other inmates on July 6, 2010 and again on July 11, 2010, and contends that the defendants in some way facilitated or failed to prevent those inmates from entering his housing area and committing the assault. He named the institution's warden, Edward Banks, its deputy warden, Timothy Buchanan, and two corrections officers, Todd Roberts and Bryan Kerns, as defendants.

The Magistrate Judge first recommended that the Court grant summary judgment to Deputy Warden Buchanan and Corrections Officers Roberts and Kerns because Mr. King failed to exhaust his administrative remedies as to those individuals. The Prison Litigation Reform Act requires that an inmate exhaust any claim against a corrections officer or other prison official through the available prison grievance system before filing suit on that claim. 42 U.S.C. §1997e(a). The statutory exhaustion requirement incorporates the rules and regulations which the State has made a part of its grievance system; that is, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Ordinarily, a claim against a particular corrections official is not properly exhausted if that official is not named in the grievance. *See Hall v. Warren*, 443 Fed. Appx. 99, 106 (6th Cir. October 18, 2011), *citing, inter alia, Jones v. Bock*, 549 U.S. 199, 218-19

2

2007).        Mr. King  has not objected to that portion of the Report and Recommendation which concluded he did not properly exhaust his claims against these three defendants because none of them were named in his grievances.  Further, the Magistrate Judge appears to have applied the law properly, since the applicable regulation, Ohio Adm. Code §5120-9-31(K), provides that "[i]nformal complaints and grievances must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved ...."  This Court has enforced that regulation as written.  *See, e.g., Rutherford v. Lamneck*, 2012 WL 15988905, *6 (S.D. Ohio May 7, 2012); *see also Leonard v. Mohr*, 2012 WL 423771, *5 (S.D. Ohio Feb. 9, 2012), *adopted and affirmed* 2012 WL 936410 (S.D. Ohio March 20, 2012) .  Therefore, summary judgment is proper with respect to these three defendants.

### III.

The Report and Recommendation relies on a different reason for recommending that summary judgment be granted to Warden Banks.  Citing to Fed.R.Civ.P. 56 and applicable case law, *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), for the proposition that summary judgment may be granted if, construing the facts reasonably in favor of the non-moving party, the moving party is entitled to judgment as a matter of law, the Report and Recommendation concluded that a reasonable trier of fact could not conclude, from the evidence of record, that Warden Banks exhibited deliberate indifference to a substantial risk that Mr. King would be harmed by other inmates.  Mr. King disagrees with that conclusion.

For purposes of summary judgment, the Court will adopt the factual statement contained

in the Report and Recommendation as correctly setting forth the factual backdrop of Mr. King's claim. The Court notes that Mr. King has not, in his objections, pointed to any inaccuracies in that statement of facts. It reads, in pertinent part, as follows:

> Mr. King is currently incarcerated for crimes of "pandering obscenity involving minors." (Doc. #28, p.2). He alleges he was assaulted once on July 6, 2010 and twice on July 11, 2010 by fellow inmates who he claims were targeting him for "touching kids." (Doc. #4, p.5). According to Mr. King's unsworn complaint, fellow inmates at NCI had placed Mr. King on a "hit list" and Mr. King notified several corrections officers that he was on this list. These officers responded that "the administration, Warden Banks, and Deputy Warden Buchanon [knew] about this hit list and that the assaults were happening but [were] not doing anything about it." (Doc. #4, p.5). In his sworn statement attached to his supplemented opposition to the motion for summary judgment, however, Mr. King does not mention the warden or deputy warden specifically and instead states only that the "administration" knew of the hit list. (Doc. #39, Ex. A).
>
> Mr. King also alleges in his complaint that the inmates who assaulted him on July 11, 2010 "had to pass by the corrections officers, [Corrections Officers] Roberts and John Doe, to get to the sleeping area" where he was assaulted. (Doc. #4, p. 11).... According to Mr. King's sworn statement attached to his motion in opposition, the officers on duty "allowed these inmates . . . to come into the unit and [assault him]." (Doc. 39, Ex. A).
>
> In a sworn affidavit, Warden Banks states that he received an email on July 11, 2010 stating Mr. King had suffered an assault by other inmates, which Mr. King believed was a result of his "sex case convictions." (Doc. #28, Ex. A). Warden Banks then approved a transfer to another prison for Mr. King "to insure his safety and security." (Doc. #28, Ex. A). Mr. King was taken to a hospital, seen by inmate health services, and placed in segregation until he was transferred to another institution. (Doc. #28, Ex. A). Mr. King was transferred out of NCI on July 13, 2010. Warden Banks claims that the first time he received any information regarding a hit list was when Mr. King's complaint in this case was filed. (Doc. #28, Ex. A).

*Report and Recommendation*, Doc. 41, at 1-3.

The Eighth Amendment prohibits prison officials from being "deliberately indifferent" to the health or safety of prison inmates and, as a result, causing them to suffer unnecessary or

4

purposeless pain or injury. *Farmer v. Brennan*, 511 U.S. 825, 828, 834 (1994). "[A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . " *Id*. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. *Id.* As a supervisory official, Warden Banks is only liable for his own misconduct and must have actively engaged in unconstitutional behavior himself. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006). In order to avoid summary judgment in favor of Warden Banks, Mr. King's filings with this Court must be sufficient to create a genuine issue of fact concerning whether Warden Banks was subjectively aware of the risk that other inmates would assault Mr. King and that such an assault presented a risk that Mr. King would suffer substantial harm. Further, there must be evidence from which the trier of fact could infer that, armed with that awareness, Warden Banks took no steps to prevent the assault from occurring. *See Farmer, supra*; *see also Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

The Report and Recommendation concluded that the sole evidence which Mr. King offered to rebut the Warden's sworn statement about his lack of knowledge of any "hit list" was hearsay statements made either by another inmate or by corrections officers, and that such statements are inadmissible for purposes of creating a genuine factual issue. In his objections, Mr. King does not address the question of whether the statements he relied on in opposing summary judgment were inadmissible hearsay, but instead argues that the Magistrate Judge should have taken into account a certain decision made by the institution's Rules Infraction Board (RIB) as well as a prison policy about RIB decisions in order to determine the Warden's

subjective awareness of the risk of assault.  The Court disagrees that these documents (some of which were never presented previously) create a genuine factual issue about what Warden Banks knew prior to July 11, 2010.

The RIB disposition on which Mr. King relies indicates that the assault which took place on July 6, 2010 occurred because the assailant thought Mr. King was a child molester.  The prison policy, which Mr. King did not previously submit, indicates that "the Warden or his designee shall review RIB panel decisions . . ."  From these two documents, Mr. King argues that a reasonable fact-finder could infer that Warden Banks must have known, after reviewing the RIB decision, why Mr. King was attacked, and that Warden Banks must have realized that if Mr. King were simply released back into the general population, he would be attacked again.

Contrary to Mr. King's argument, even if an inference can be drawn that Warden Banks knew sometime before July 11, 2010 that one prisoner had attacked Mr. King because Mr. King had supposedly committed a sex crime involving children, the fact that a prisoner is attacked by inmates and later attacked again does not of itself demonstrate subjective awareness.  In *Klebanowski v. Sheahan*, 540 F.3d 633, 639-640 (7th Cir. 2008), the court held that there was no deliberate indifference where a prisoner was attacked twice by the same assailants, even though the prisoner told officers after the first attack that he was afraid for his life and wanted to be transferred but did not tell officers the reason why. The court held that knowledge of the first beating along with vague statements concerning future attacks were insufficient to show that prison officials were deliberately indifferent to risk of a subsequent attack.

The same holds true here.  First, even to find that Warden Banks actually reviewed the RIB disposition concerning the first assault on Mr. King, the trier of fact would have to engage

6

in an extensive (and impermissible) chain of inferences, none of which are supported by any evidence. The policy itself allows someone other than the Warden (a "designee") to review RIB dispositions, and there is nothing in the record which would allow a trier of fact to determine that the Warden himself performed this duty. Moreover, the RIB disposition in question is dated July 7, 2011, only four days prior to the second attack. Even if the Warden had not designated another corrections official to perform the required administrative review of RIB dispositions, there is no evidence that he reviewed this particular disposition within three days after it was handed down. A finding to the contrary would, on this record, be pure speculation.

Even if Mr. King could clear this hurdle, as *Klebanowski* holds, the mere fact that a prison official is aware of one assault on an inmate is not enough to show that the official was actually aware of a risk of a second assault. Further, it is almost always the case that prison officials know that sex offenders, especially those whose crimes involve children, may be targets of assault for just that reason. But it is not the law that prison officials thereby become liable every time such an inmate is assaulted. Rather, there must be other evidence to support a claim of deliberate indifference, such as where the inmate fits a profile of those especially vulnerable to attack, *see, e.g., Taylor v. Michigan Dept. of Corrections*, 69 F.3d 76 (6th Cir. 1995), or where a prison guard chooses to publicize the nature of an inmate's crime and admits knowing that such information, when spread to other jail residents, creates a significant risk or attack. *See Leary v. Livingston County*, 528 F.3d 438 (6th Cir.2008). No such facts are present here. Thus, even taking Mr. King's newly submitted evidence into account, there is no material factual dispute about whether Warden Banks was deliberately indifferent to Mr. King's safety after the first assault occurred. To the extent that his argument is simply that the Warden should have

known of an increased risk of assault due to Mr. King's pandering obscenity conviction and the first assault, such an argument "describe[s] conduct which is negligent at best," and negligence is not enough "to trigger Eighth Amendment protections." *Himmelreich v. Federal Bureau of Prisons*, 2011 WL 864948, *5 (N.D. March 11, 2011).

## IV.

It is a fair reading of Mr. King's objections that he not only argues that the present record is sufficient to allow the case to proceed to trial, but that he was not given sufficient discovery to prove his allegation that the Warden knew of the risk that he would be assaulted. In particular, Mr. King claims that defendants failed to turn over incident reports showing that there had been assaults on other inmates at the institution. Had he received this information, he argues, he would have been able to show that other convicted sex offenders were assaulted just as he was. The problem with this argument is that it was not made in response to the motion for summary judgment, and there is no record in this case that Mr. King either did not get discovery which he had asked for or asked the Court to compel production of that discovery. He cannot argue now, at this late stage of litigation, that his inability to oppose the motion for summary judgment was the result of inadequate discovery.

## V.

Mr. King's final argument appears to be that, had counsel been appointed, he could have successfully opposed the summary judgment motion. He had moved for the appointment of counsel earlier in the case, and his first motion was denied by the Magistrate Judge and by the District Court upon reconsideration. Three subsequent such motions were also denied by the Magistrate Judge.

Appointment of counsel in a civil case is not a constitutional right and is justified only by exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 605-606 (6th Cir. 1993). "In determining whether 'exceptional circumstances' exist, courts have examined 'the type of case and the abilities of the plaintiff to represent himself.'" *Id*. at 606 *quoting Archie v. Christian,* 812 F.2d 250, 253 (5th Cir. 1987). This examination typically involves determining the "'complexity of the factual and legal issues involved.'" *Lavado,* 992 F.2d at 606, *quoting Cookish v. Cunningham*, 787 F.2d 1, 3 (1st Cir. 1986). A court should not appoint counsel when a pro se litigant's claims are "frivolous" . . . or "when the chances of success are extremely slim." *Lavado*, 992 F.2d at 606.

Under these standards, appointment of counsel is warranted in this case. Neither the facts of this case nor the legal issues involved in this case are complex. Instead, this is a relatively straightforward §1983 case. Mr. King has demonstrated himself capable of filing and making intelligent arguments on his own behalf. Moreover, even drawing all reasonable inferences from the evidence in his favor, he had little chance of success on the merits, primarily for the reasons stated above, which confine his claim to one against the Warden and indicate that it is extremely unlikely that, even with counsel, he could create a factual issue as to the Warden's advance knowledge of a risk of assault. At this point, as at prior times in the case, there are no exceptional circumstances justifying appointing counsel on Mr. King's behalf.

VI.

Pursuant to 28 U.S.C. §636(b)(1), this Court has conducted a de novo review of the Magistrate Judge's Report and Recommendation. After careful review of the entire record, this Court is unpersuaded by any of Mr. King's arguments. For the foregoing reasons, and for the

9

reasons detailed in the Magistrate Judge's Report and Recommendation, the objections to the Report and Recommendation (Doc. 43) are **OVERRULED**.  The Report and Recommendation (Doc. 41) is **ADOPTED** and **AFFIRMED.**  Defendants' motion for summary judgment (Doc. 28) is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**.  The Clerk is directed to enter judgment in favor of defendants.

                                        s/Algenon L. Marbley
                                        Algenon L. Marbley
                                        United States District Judge

DATED:  July 13, 2012